20-2309 from the Eastern District of Arkansas. Dan Whitfield versus John Thurston. Mr. Linger. Yes, may it please the court. James Linger for the appellate Dan Whitfield. This case concerns another challenge to the ballot access laws in Arkansas for independent candidates, particularly an independent candidate for statewide office where in 10,000 petition signatures of Arkansas voters are due no later than noon at May 1st of the election year where there is a fixed non-rolling 90-day period. Mr. Linger, if I can redirect you off the merits, I think it might be helpful if you address our question on mootness that we asked for additional briefing on. Yes, your honor. I do not think the case is moot under precedent in Arkansas as set that the complaint I had sections of it I talked about because we're talking about future elections. Mr. Whitfield is an Arkansas voter. He has not made a decision as to the next election. There's some talk out of the record that he might be a Democrat candidate. That partly depends maybe on the decision of this case. If it continues to be so hard to be a statewide independent candidate, it may force them to do that. It may not. But this court in the McClain v. Meyer case, particularly the 1980 case, emphasized the fact that the law should not be justified for party candidates or independent candidates because the alternative might be more reasonable. You should inform counsel. As you mentioned, that's a 1980 case and we have a 1993 in-bank case. It's Arkansas AFL-CIO and it's in-bank and it's later and, boy, it says same complaining party requirement. What do you say about the Arkansas AFL-CIO case? Well, number one, it's not I don't think it is a ballot access case. I don't see where that would have an effect because, as you know, generally election cases are considered an exception to the mootness rule because it's repetition yet evading review. What is important is I don't think a political party candidate should be forced to be an independent candidate or an independent candidate should be forced to be a political party candidate. I think that is a key distinction. We cited quite a number of cases, not just from this circuit, but from other circuits where people couldn't even qualify or later on they no longer were even going to run again. And yet it's still considered not to be moot because this is a serious problem because we have this designated, specific, non-flexible 90-day period and this is going to continue to be a problem for independent candidates if there's bad weather or a pandemic. And I particularly think it's very ironic that not only almost 10 months ago did an entire trial that lasted all day have to be done over the telephone from about 14 different locations, but now 10 months later we are having a virtual conference in the 8th Circuit where we're in different locations. And yet that would tend to tell me that maybe the pandemic's effect was severe considering that the court both here and in district court is taking these precautions. So I think we addressed the mootness issue in our brief and I think there were a number of cases and we must say this is an election law case. Counsel, you used the phrase was severe. Doesn't that indicate that you're looking backward rather than prospectively and doesn't that indicate that the severe burden was predicated upon the conditions of the COVID-19 pandemic and are those likely to be repeated? Well, they seem to be repeating right now. I don't know when it's going to end, but we do know that this sort of thing, diseases and pandemics, can hit from time to time. We don't think that when this eventually ends, if it does, that it won't ever occur in the future. History has taught us it will occur again and we also know bad weather. We've cited some cases where bad weather, it doesn't impact it have a year or more to petition like you do for presidential independent candidates in Arkansas. There's no time limit there and they have a later date and lesser signatures, but this will happen again. It has happened in the past. It will happen in the future and further, the district court, as we noted in our brief, made a number of mistakes and one of the big mistakes I noticed, I know Judge Benton was on the original Moore v. Martin case where the March 1 deadline was up, but the district court assumed when that case was taken up and after it was briefed, the legislature in Arkansas changed the law and the case became looted, but the district court thought therein that the May 1 deadline at noon had been upheld by the 8th Circuit and you read the Moore v. Thurston case, it didn't do anything of the kind. We actually talked about it, but they weren't going to give an opinion because that was something that had come up after the briefing and they passed on that and there were serious problems with the May 1 deadline. You actually can't petition on May 1 because you have the 90 days, you turn them in, and in this case below, as you know, Mr. Whitfield, a number of his supporters actually had, they were still having ballots come in on May 1 after he turned them in, so there was a severe effect because of that, but there's always going to be a severe effect when you only have 90 days. This will come up in the future and unlike, for example, the case that this same district judge decided in the favor of the Libertarian Party in 2019 on a preliminary injunction and then the Secretary of State appealed to the 8th Circuit and was decided last summer affirming her that the law there was unconstitutional, that was where they had raised the party petitioning from 10,000 up to about 26 or 27,000 and the judge said there was no reason for it. The 8th Circuit in that decision unanimously said that that from previous decisions was probably, that was correct, but you know something? At least when you have a party trying to get to 10,000 signatures, they don't have a set 90-day period. They have a, they can move it around and then they can plan ahead if they think there's going to be bad weather or a pandemic, but you have no- I'd like to go back to Judge Benton's question. Don't the Arkansas AFL-CIO and the National Right to Life versus Connor and then the Supreme Court's decision in Davis versus FEC, don't they all suggest that even in election cases you have the same party requirement? I don't think that that's exactly applicable to this case because of the circumstances, the unique circumstances here. This was of course both an as-applied and a facial challenge as was recognized by the district court, but I don't think that precludes a decision. In addition, is there anything in the record indicating that your client intends to run for I guess Senate as an independent? There's nothing in the record as to what he plans to do in the future. I think you, I had cited the case of the Eighth Circuit in Van Bergen, of course, where one of the things the Eighth Circuit said there is that if you're trying to have a decision in a case and before the election is over, before the case can be fully argued in the appeals court, that that's a reason why it does not become moot. And here, you know, your honor, you may remember we filed actually two the court turned us down in both instances, unlike the Libertarian case in 2019 and 2020 when the court actually allowed the state to have an expedited appeal there. They lost, of course, but the point of the matter is I think that is a distinction that has been recognized by the Eighth Circuit when you, because basically we were never going to have a decision until after the election. And I think that is a significant distinction. So, if we look at this, comparing it, why is it, if this is so essential, and I do think the effect was severe here, when you consider that under normal circumstances in 43 years, we've had three independent candidates and the one in 78, that was when you had a deadline up until May 29th, there's been more time, I think at one point in the 90s, they actually had 150 days, but it's been limited, 90 days, since it's been 90 days, they've only had two candidates in 06 and in 2010, nothing for 11 years. That would indicate, as recognized by the Eighth Circuit and other decisions, that there hasn't been an awful lot of compliance with this law. So, I believe if I've taken up about 10 minutes of my time, I would deserve the balance of my time for rebuttal. Very well. Thank you, Mr. Liener. We'll hear from you, Mr. Jacobs. Thank you, Your Honor. My name is Dylan Jacobs. I'm an Assistant Solicitor General here on behalf of Arkansas Secretary of State, John Thurston. If I may, I'd like to begin with the mootness issue and then later move on to the merits. Dan Whitfield brought this case so that he could be placed on the ballot for the November 2020 election. That election is over, and there is no relief that this court could order that could change that. And Whitfield's only alleged injury, which is exclusion from the 2020 ballot, is no longer redressable by a court, and that renders this case moot. And Whitfield doesn't contest that nothing can be done about the 2020 election. He makes primarily two arguments against mootness. The first is that declaratory or injunctive relief as to future elections is enough to render the case not moot, but that isn't right because that doesn't redress any injury that Whitfield himself would have. Because as your honors were discussing, there's nothing in the record that gives any indication that Whitfield has any plans to run again as an independent candidate for states as in Arkansas. Mr. Jacobs, he also argues that the same complaining party requirement doesn't apply in election cases. How do you respond to that? So I don't think that's right, your honor. And it is true in older cases such as Storer and Anderson. In the footnotes in those cases where they discuss mootness, they don't mention that requirement. They just don't discuss the issue. But when we get to later Supreme Court cases that are election cases, in particular, Myer v. Grant would be one of the first ones. I don't believe it's cited in the briefs, but it's 486 U.S. 414. That's a 1985 case. If you look in footnote two of that opinion, which contains the court's discussion of mootness, it cites the same complaining party requirement as part of that test. And that was, I believe, an initiative signature gathering case. In this court, your honors mentioned the AFL-CIO case as well as the Davis case. I'd point the court also to the FEC v. Wisconsin right-to-life case, which I believe was 2007. It was an election case. The Supreme Court cited the same complaining party standard. Also in 1995, there was an Eighth Circuit case, Van Bergen, which is cited in Whitfield's supplemental brief. And on page 1547 of that opinion in the mootness discussion, the court cites the same complaining party language. And that again was an election dispute. So I think that in the cases that have squarely this court and the Supreme Court have relied on the same complaining party requirement in the context of mootness. And we simply don't have anything in the record here that suggests that that's true as to Whitfield, that he will suffer a personal injury. Sure. And also, he can't meet the second requirement of the mootness exception either, that even if he had the same injury in a future election cycle, that a lawsuit over it would necessarily evade judicial review. As the Seventh Circuit recognized, signature challenges are resolved prior to elections now. And I think this court's handling of the Miller versus Thurston case last summer demonstrates that these sorts of cases can be expeditiously decided both by the district court and by this court. So that case involved a judgment entered by the district court, a final judgment in late May. And this court ordered expedition and rendered a suit less than two months after the district court's final judgment. And had Whitfield sought expedited review expeditiously and with a more meritorious case perhaps, this court was fully capable of resolving that prior to August deadlines for printing ballots. And so I think- He did seek expeditious review, didn't he? He sought expedition, but he didn't do so expeditiously, if you'll forgive the quip. So if you compare, again, with the Miller case, where you had a much quicker ask for expedition, a week after judgment versus two, and a much more robust request, in that Whitfield's first request for expedition contained barely any legal argument at all. The court's order denying relief didn't specify the reasons, but the arguments from us were obviously that he didn't seek it quick enough and that in any event that the merits of the case didn't justify doing it. But that doesn't mean that in a case where it would be appropriate, that this court is incapable of resolving that dispute before the election. I think that it is, and I think that Miller shows that. And so since he can't meet either of the two requirements of the mootness exception, I do think this case is moot and that the proper course is dismissal. Turning to the merits of the case, Arkansas's independent candidate ballot access regime is plainly constitutional as a general matter, and the Constitution does not require Arkansas to create exemptions for candidates to account for things like pandemics or bad weather, as Whitfield claims. So I'd start with standing, and we don't think that Whitfield has standing, at the very least, to challenge the first week of November party filing deadline as he met the requirement easily and hasn't alleged any sort of injury as to that requirement. Counsel, what's the state's interest in having such a narrow window in which to gather signatures? I can understand the end date because they have to print ballots, but what's the state's interest in giving them such a small amount of time? Well, your honor, I don't think 90 days is really all time. The cases in this area routinely involve 90-day and even shorter windows. For example, American Party of Texas would be one that I think was a 55-day window. I'm not saying that others don't do it too, but what's the state's interest? Well, so in the context of the Anderson-Burdick framework, so long as it's a non-severe burden, the interest is the state's interest in fair, honest, and orderly elections and also its administrative processing of it. And I think it's part of the modicum of support requirement that you view together the amount of signatures and the time frame in which to gather it. And so though your honor may consider 90 days to be relatively short, Arkansas's signature requirement for independent candidates amounts to 0.58 percent of the eligible pool, which is significantly below the upper threshold that this court's recognized, comes from Genes, for example. What's the shortest, counsel? I'll ask it this way. What's the shortest time the United States Supreme Court or this court has approved? I'm only aware of 55 days as being the shortest. You think that's the shortest? That's the shortest that I'm aware of off the top of my head. And that percent in that case was a one percent eligible pool requirement. And so not only do we have a longer requirement in that case, for 90 days, we have almost half of the signature requirement. Which state's law was it, if you know? It was Texas, I believe. I think it was American Party of Texas. And I believe that case is cited in our briefs. And so if you think those two requirements together, it's not all that burdensome. Genes, for example, involved five percent in 180 days. And so if you view it in that light, we're less than a quarter as burdensome as that when you consider 0.58 percent in 90 days with the same 180 day-ish prior to the election deadline for submitting signatures. So I think that Arkansas's independent candidate requirements are well within the bounds set by the Supreme Court. And so long as it doesn't impose a severe burden, which this is correctly held that it didn't, the question isn't whether Arkansas can make it slightly less burdensome by changing around a deadline here or a number of signature requirements there. So long as it's a non-severe burden, this court and the Supreme Court have held that state's generalized interests in fair, honest, and orderly elections are going to be enough to support that under the Anderson-Burdick framework. And COVID-19 didn't change that. So the injury that Whitfield complains of, his exclusion from the ballot, isn't due to Arkansas's ballot excess laws so much as Whitfield's unilateral decision to stop trying to comply with them. So the record in this case shows that once Arkansas's state of emergency was declared, Whitfield made the decision to stop in-person signature gathering despite no action on the state's part requiring him to do that or the course of the entire period for him to gather signatures. And as the district court found, there were options available to Whitfield and other candidates and initiative petition signature gatherers to continue the petitioning process with proper safety protocols in place and continue gathering signatures. And this court recognized in the Miller case that those were available and it listed a number of options that petitioners have to continue in the pandemic. And in that case, it held that it was constitutional in the initiative and referenda context for Arkansas to require in-person signing and witnessing of petitions even in the context of COVID-19. So I think that this court doesn't really need to go any further than that to affirm the district court's decision on that point. And so unless the court has any questions on the equal protection claim, I think I will see the balance of my time. Thank you, your honors. Hearing none, thank you, Mr. Jacobs. Mr. Linger, your rebuttal. You will need to unmute your microphone, please. Thank you, your honor. I said in regard to the argument about the expedited appeal, and this is the only case I have ever had where I filed two motions for expedited appeal. I think if you go back and look at the libertarian case decided also by Judge Baker in 2019, which the secretary of state appealed, we got our motion filed quicker than they did in the 8th circuit. And one of the reasons we did not start with the district court is I remember in that case they had filed a motion for injunctive relief and reconsideration, and they ended up filing in the 8th circuit because it went along for quite a few weeks and they decided to go on and do that. I think we got to the court in plenty of time for a decision. I think we made some good points there, but after the court turned down the request for injunction and expedited appeal, then I simply filed a request for expedited appeal as to that, and we filed our first brief according to what we asked for. I think the next day after we filed, we retired down on that expedited appeal, unlike the secretary of state in the previous case the year before when they were expeditiously. It seems a bit ironic to me that you can have one of these decisions, ask for an expedited appeal, be turned down twice, and then when the election is over say now the case is moot. That doesn't seem fair under the circumstances and under the exceptions recognized because I think it is clear that this issue will come up again, and one other point which I think is made in the briefs, you have to declare under the current law to be an independent candidate about a year before the general election. You have to have your political practices pledge, your notice of candidacy, and your affidavit about in the first week in November, but you can't start petitioning in November or December or January because you have this set 90-day period, and that just what is the basis of that? The major party candidates that are going to be in primary elections can campaign and do things, but the independent candidates are basically put on hold for three months, and ironically, that would have been a time before this pandemic hit, so that actually hurt them, and then the misunderstanding of the district court about this court's decision in the Moore case, thinking in the second Moore v. Thurston case after the district court had declared the old March 1 deadline unconstitutional. In that instance, when it was a March 1 deadline, you could file your notice of candidacy and affidavit and political practices pledge on the same day you turned in the petitions, and we argued there that when it was May 1st, we were challenging that because it wasn't that much of an improvement because basically you had to stop petitioning on April 30th, and there was a question about that, but this court did not get to that decision there because it had mooted the case because of the change of the law, and that had been done all after the briefing, but the court still thought that this court had upheld a May 1 deadline, and a May 1 deadline for independent candidates where they have this set, nonrolling, fixed petitioning period when they have 10,000 signatures that's hardly ever been complied with since 1978, only twice, and that is a factor that has been held by the 8th Circuit and the district judge in the libertarian case in 2019 as affirmed by this court last summer found that the 10,000 signatures was a daunting task for a political party, and this court recognized that independent candidates have less resources than do political parties. Mr. Whitfield, as the record shows, put out a great effort in this case, and he had many volunteers and expended money. They did not expect the pandemic, and it was devastating what happened here. We don't know what the future is going to bring, but I think it's pretty sure, just as sure as the turning of the earth, that we are going to have this problem come up again. We are going to have bad weather, floods, hurricanes. Petitioning is largely something done as an outdoor activity, and if the court in both the district level and the court of appeals takes measures to protect us and protect themselves, what can we say about petitioning where you have to meet up many times with people you don't know and talk about politics and explain things to them? People who have never done this may think it's much easier to do than it actually is, but the law under normal circumstances, as the court noted below, there haven't been very many independent statewide candidates in Arkansas, and this is not a normal situation, and it's continued not to be a normal situation, so I do not think this case is moot, and I think Mr. Whitfield acted expeditiously. There is a very small window here, and you can't even move it around like you can when you're a political party when you can pick what 90 days you want to use, and you can't have an unlimited amount of time like independent presidential candidates can where they don't even have to file their petitions until about the first of August. They have a lesser requirement, and they can petition for an entire year, and the longer you have to petition, the less likely bad of signatures. This is a problem that should be addressed. This should be something that should be an exception to the mootness because it's capable of repetition, yet evading review, particularly here where we couldn't have a decision by this court before the election. Thank you, Mr. Langer. Your time has expired. Thank you, John. We appreciate both counsel's appearance and briefing and supplemental briefing in this case. The case is submitted, and we will decide it in due course.